UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JUDY BERNAL, Individually and on Behalf of Her Minor child, YVONN BERNAL, CAROLINA GUTIERREZ, and KAREN GUTIERREZ,<br><br>Plaintiffs,<br><br>v.<br><br>CORRECTIONAL OFFICER ALEX JOHNSON #2751,<br><br>Defendant. | No. 13 CV 06726<br><br>Judge James B. Zagel |

## MEMORANDUM AND OPINION ORDER

Plaintiffs Judy Bernal, Yvonn Bernal, Carolina Gutierrez, and Karen Gutierrez ("Plaintiffs") filed this action against Defendant Correctional Officer Alex Johnson ("Defendant") pursuant to 42 U.S.C. § 1983. Defendant moves to dismiss Plaintiffs' claim pursuant to Fed. R. Civ. P. 12 (b)(6) for failure to state a claim on which relief can be granted. For the reasons explained below, Defendant's motion is denied.

### I. FACTUAL BACKGROUND

On September 3, 2012, Plaintiffs, all residents of Cook County, Illinois, were visiting Samuel Quezada at Stateville Correctional Center, a maximum-security prison located in Crest Hill, Illinois. Plaintiffs allege that they were compliant and cooperative with all orders given by Stateville officers and employees during the entirety of their visit. Plaintiffs additionally allege that at some point during the visit, and without provocation, Defendant, a correctional officer employed at Stateville Correctional Center at all relevant times, sprayed them with pepper spray. After the pepper spray was deployed, Officer Roscoe, Major Tory, and Lieutenant Hall came to

1

the aid of Plaintiffs. When Plaintiff Judy Bernal asked Major Tory for Defendant's name, Tory responded that he could not provide her with it. The deployment of pepper spray caused Plaintiffs to suffer injuries including eye irritation, rashes on various parts of the body, trouble breathing, nose irritation, and excessive mucus.

Plaintiffs brought this action under 42 U.S.C. § 1983 against Defendant in his individual capacity, alleging the use of pepper spray amounted to excessive force, and therefore violated their Fourth Amendment right to be free from unreasonable seizures.

## II. LEGAL STANDARD

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) does not test the merits of a claim; rather it tests the sufficiency of the complaint. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In deciding a 12(b)(6) motion, the court accepts all well-pleaded facts as true, and draws all reasonable inferences in favor of the plaintiff. *Id.* at 1521. To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

## III. DISCUSSION

"**[**Section] 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor,* 490 U.S. 386, 393−394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (internal quotations omitted). Accordingly, to state a claim under 42 U.S.C. § 1983, Plaintiffs' Complaint must allege facts that, taken as true, show that "(1) [Plaintiffs were] deprived of a right secured by the Constitution or laws of the United

States, and (2) the deprivation was visited upon [them] by a person or persons acting under color of state law." *Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir. 2007). Plaintiffs bring a single claim against Defendant Correctional officer Alex Johnson under 42 U.S.C. § 1983 alleging that Defendant's use of pepper spray against them constituted a violation of their Fourth Amendment rights.

1. **Acting Under the Color of State Law**

In order to state a § 1983 claim, Plaintiffs allege that they were deprived of a federally guaranteed right by a governmental official acting under the color of state law. *Wilson v. Price*, 624 F.3d 389, 392 (7th Cir. 2010). "Action is taken under color of state law when it involves a misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Honaker v. Smith*, 256 F.3d 477, 484 (7th Cir. 2001) (internal quotations omitted). This may be done through "employment or some other agency relationship." *Case v. Milewski*, 327 F.3d 564, 567 (7th Cir. 2003). "[A]cts by a state officer are not made under the color of state law unless they are related in some way to the performance of the duties of the state office." *Honaker*, 256 F.3d at 485. Plaintiffs allege that, at all times surrounding the incident, Defendant was a duly appointed correctional officer employed by Stateville Correctional Center. Plaintiffs allege that when Defendant deployed and released pepper spray directly at them, he was on duty and acting on behalf of Stateville Correctional Center. These facts are sufficient to give rise to the inference that Defendant was acting under the color of state law.

2. **Excessive Force**

Plaintiffs' claim against law enforcement for the alleged use of excessive force during an "arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the

Fourth Amendment and its 'reasonableness' standard….'"*Acevedo v Canterbury*, 457 F.3d 721, 724 (7th Cir. 2006) (quoting *Graham*, 490 U.S. at 395, 109 S.Ct. 1865). Specifically, to state a claim for excessive force, Plaintiffs must allege both that (1) they were "seized" within the meaning of the Fourth Amendment and (2) the "seizure" was unreasonable. *Carlson v. Bukovic*, 621 F.3d 610, 618 (7th Cir. 2010).

**A. Seizure**

Analysis of an excessive force claim begins by determining whether a seizure actually occurred. *Carlson*, 621 F.3d at 618. "A Fourth Amendment 'seizure' of a person occurs whenever a [law enforcement] officer by means of physical force *or* show of authority in some ways restrains the liberty of a citizen." *Hawkins v. Mitchell*, 756 F.3d 983, 992 (7th Cir. 2014) (emphasis added). *See Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (explaining a seizure has occurred when an officer "by means of physical force *or* show of authority, has in some way restrained the liberty of a citizen . . ."); *Brendlin v. California*, 551 U.S. 249, 254, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007) (holding a seizure occurs when the officer by way of physical force or show of authority terminates or restrains a person's freedom of movement); *see also Acevedo*, 457 F.3d at 724 (explaining that previous Seventh Circuit decisions read "out of context" could be interpreted to require a showing of physical force along with a show of authority).

In cases involving the use of physical force, "there is a seizure whenever an officer restrains the freedom of the person to walk away," *Acevedo*, 457 F.3d at 724, "through means intentionally applied." *Brower v. County of Inyo*, 489 U.S. 593, 597, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989). The use of physical force to effect a seizure includes "laying on of hands or application of physical force to restrain movement." *California v. Hodari D.*, 499 U.S. 621, 626,

111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). However, some non-restraining physical contact by an officer is too minor to constitute a seizure. *See Acevedo*, 457 F.3d. at 725 (explaining that "[c]ertain types of non-restraining physical contact, without a concomitant showing of authority, are just too minor to constitute a "seizure" for Fourth Amendment purposes…"); *Carlson*, 621 F.3d at 620 (holding "mere physical contact by an officer, although a significant factor, does not *automatically* qualify an encounter as a Fourth Amendment seizure.") (emphasis original).

Even without using physical force, an officer "may make a seizure by a show of authority," so long as the person submits to the governmental show of authority. *Brendlin* 551 U.S. at 254, 127 S.Ct. 2400. "[B]ut there is no seizure without actual submission[] . . . so far as the Fourth Amendment is concerned." *Id.*; *Hodari D.*, 499 U.S. at 1552, 111 S.Ct. 1547. When law enforcement "actions do not show an unambiguous intent to restrain or when an individual's submission to a show of governmental authority takes the form of passive acquiescence," the test used is: whether "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Brendlin*, 551 U.S. at 255, 127 S.Ct. 2400; *U.S. v. Mendenhall*, 445 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).

Defendant, relying on *McCoy v. Harrison*, argues that Plaintiffs' Complaint is deficient because there are no allegations to substantiate the claim that Plaintiffs were "seized" such that there was use of physical force *along with* a show of authority within the meaning of the Fourth Amendment. 341 F.3d 600, 605 (7th Cir. 2003). In *McCoy,* a state animal welfare investigator confronted the plaintiff, slapped her to the ground, grabbed her by the arm and walked away immediately. *Id*. at 603. The court held that no seizure had occurred because plaintiff's freedom of movement was not restrained nor was there intent to gain physical control over the plaintiff. *Id*. at 605.

5

In contrast, in *Acevedo v. Canterbury*, the court examined "the totality of the circumstances" under which the plaintiff was detained to find a "seizure." 457 F.3d at 725. There, a plaintiff along with several other people went to a police impound lot to recover a car. *Id.* at 722. For reasons in dispute, the defendant, a police officer, was called to the impound lot by the lot manager. *Id.* at 722−723. An exchange between plaintiff and the police officer ensued, which quickly turned into a verbal altercation. *Id.* at 723. After a few minutes, both plaintiff and the police officer turned to walk away from each other. *Id.* While plaintiff was looking away, the police officer rushed plaintiff and struck him in the side of the head. *Id*. The plaintiff stumbled backwards, fell to the ground, and momentarily lost consciousness. *Id.* at 725. After a few seconds, the plaintiff picked himself up off of the ground and walked to his car. *Id.* The court held that the blow to plaintiff's head constituted a seizure. *Id.* at 724.

In reaching its decision, the court reasoned, "[a] blow by a police officer that immobilizes the recipient easily meets the definition of a seizure. The fact that the restraint on the individual's freedom of movement is brief makes no difference." *Id*. The court then distinguished the case from *McCoy* by explaining that, considering the totality of the circumstances the amount of force used by the defendant in *Acevedo* was greater; the defendant was momentarily incapacitated; and the plaintiff was in a place under the general control of the defendant's fellow police officers. *Id*. at 724−725.

Like *Acevedo*, the case before the court is distinguishable. Similar to the defendant in *Acevedo*, and unlike *McCoy*, Defendant used a significant amount of force that temporarily immobilized plaintiffs. Plaintiffs allege that Defendant used physical force when he directly sprayed Plaintiffs with pepper spray. Plaintiffs further allege that, as a result of Defendant's actions, they suffered severe injuries, including eye irritation, trouble breathing, rashes, nose

6

irritation and excessive mucus. Additionally, while the plaintiff in *McCoy* was near her home and immediately went inside her home after the altercation, Plaintiffs were in a correctional facility—a highly regulated environment under the Defendant's employer's control—which, as Defendant points out, already restricts movement. In light of the surrounding circumstances, Defendant deploying pepper spray onto Plaintiffs sufficiently raises the plausible inference that the restraint on their liberty was significant enough to constitute a seizure. *McCracken v. Freed*, 243 Fed. Appx. 702, 708-709 (3rd. Cir. 2007) (holding plaintiff was "seized" when law enforcement deployed pepper spray canisters into her home while she was inside); *Logan v. City of Pullman*, 392 F. Supp. 2d 1246, 1260 (E.D. Wash. 2005) (holding a "seizure" occurred when police officers sprayed plaintiffs with pepper spray); *Yelverton v. Vargo*, 386 F. Supp. 2d. 1224, 1228 (M.D. Ala 2005) (holding a "seizure" occurred when a police officer pepper sprayed the driver of a vehicle, despite the fact the person continued driving after the spray was administered).

      b.      **Reasonableness**

Upon finding that the alleged conduct amounts to a "seizure," I must next determine whether Defendant's conduct was reasonable. *Graham*, 490 U.S. at 395, 109 S.Ct. 1865. "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of facts and circumstances confronting them, without regard to the underlying intent or motivation." *Id*. at 397. Courts have held the use of pepper spray to be excessive when it is "gratuitous or unprovoked. " *Brooks v. City of Aurora, Ill.*, 653 F.3d 478, 486. (7th Cir. 2011); *see, e.g.*, *Gonzalez v. City of Elgin*, 578 F.3d 526, 541 (7th Cir. 2009) (holding that "it is clearly established that officers may not, without provocation, start pepper-spraying . . . and otherwise mistreating people[.]"); *Case v. Milewski*, 2001 WL

630712 * 3 (N.D. Ill. 2001) (concluding use of pepper spray on a citizen constituted a seizure, and furthermore "it was a seizure based on nothing more than defendants' whim, a clear violation of the Fourth Amendment."). In the case before the court, Plaintiffs allege that they were cooperative and compliant with all Stateville employees' directives, but were nonetheless pepper-sprayed. Taken as true, pepper-spraying Plaintiffs without provocation is an unreasonable seizure, and therefore a violation of the Fourth Amendment.

### IV. CONCLUSION

For the reasons discussed above, Defendant's 12(b)(6) motion to dismiss Plaintiff's claim for failure to state a claim on which relief can be granted is denied.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: September 25, 2014