# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JUDY BERNAL, et al.,

       Plaintiffs,

          v.

CORRECTIONAL OFFICER ALEX
JOHNSON,

       Defendant.

No. 13 C 6726
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Alex Johnson's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56. Plaintiffs allege that Defendant used excessive force against them in violation of 42 U.S.C. § 1983 and the Fourth Amendment of the U.S. Constitution.

For the following reasons, Defendant's Motion for Summary Judgment is denied.

## I. BACKGROUND

On September 3, 2013, Plaintiffs Judy Bernal ("Judy"), her infant daughter Yvonn Bernal ("Yvonn"), and Judy's sisters Carolina Gutierrez ("Carolina") and Karen Gutierrez ("Karen") (collectively, "Plaintiffs") were visiting their cousin Samuel Quezada ("Quezada"), an inmate at Stateville Correctional Center ("Stateville"). Stateville is a maximum-security prison. Following the visit, Plaintiffs were subject to Stateville's required check-out procedure, which involves being escorted by a guard through Gate A, receiving paperwork, being escorted by a guard through Gate B, and being escorted by a guard from Gate B to the visitors' center. Gate A is located near the Armory.

While waiting for a guard to escort them through Gate A, Plaintiffs encountered Defendant Alex Johnson ("Defendant" or "Johnson"), a correctional officer who was preparing

to return a can of O/C pepper spray to the Armory. Plaintiffs were standing in a single line with Carolina in front followed by Judy with Yvonn in her arms and Karen in the back. By Defendant's admission, Plaintiffs were "cooperative, compliant, and not a threat to anyone at all relevant times while in the vicinity of Defendant."

According to Johnson, he accidentally dispersed the O/C pepper spray while he was securing it to the utility belt on his waist. Johnson did not believe it was necessary to disperse the spray and insists he did not intend to do so. Plaintiffs encountered the O/C pepper spray as they walked through Gate A. Neither party exchanged words before or after the spray was dispersed, and Johnson did not touch or follow any of the Plaintiffs after the incident. Once Plaintiffs encountered the spray, guards quickly ushered them through both Gates without stopping to collect paperwork. Thus, Plaintiffs were only in the affected area between Gate A and Gate B for 30 seconds to a minute.

Plaintiffs reported various effects of their encounter with the spray. They recalled being hit in the face and neck, and Judy experienced a burning feeling on her face, part of her neck, and her left arm which lasted until the evening. Carolina suffered from coughing, sneezing, watery eyes and an itchy face. The sneezing and watery eyes lasted for a couple of hours while her face continued to itch for a day or two. Karen experienced sneezing, a raspy throat, mucus, a rash on the side of her neck, and watery eyes lasting for an hour to 90 minutes. Finally, Yvonn experienced trouble breathing, mucus, and red and puffy eyes. She also had red markings on her back that Plaintiffs contend was a rash from the pepper spray. Plaintiffs reported that Yvonn had breathing issues and wheezing for the next three days; she sneezed and had mucus for four to five days; she had a rash on her back for one day; and she cried more than normal and had an unusually difficult time sleeping for a month after the incident.

Plaintiffs admit they do not know why Johnson dispersed the spray, but point out that Johnson was trained as to how the trigger and safety flap on the O/C pepper spray function and further trained that when using pepper spray, he should aim at the targets' face. He was also taught to hold the can of pepper spray at or around his shoulder level when using it to disperse the spray. Johnson testified that if he held the spray at or above his head level and spray came out, it could not have been an accident. Judy and Carolina both testified that Plaintiff was holding the spray at or near his head level when the spray dispersed.

Additionally, Johnson's deposition testimony of the incident differed significantly from other witnesses' recollections. Johnson's supervisor Major Torri ("Torri") recalled that Johnson told him that Plaintiffs were four to six feet away from Johnson during the incident, and Plaintiffs tell a similar story. Likewise, Lieutenant Troy Hall ("Hall"), a chemical agent instructor at Stateville, testified that simply passing through an area contaminated with pepper spray while fully clothed would not likely incite a rash on the body, as Plaintiffs reportedly observed on Yvonn's back after the incident. Conversely, Johnson testified in his deposition that no one was in the vicinity when the spray was dispersed and that it only directly hit the wall behind Johnson. Johnson recalled that Plaintiffs were down the staircase in the visiting room when the spray dispersed and thus were not hit by it, but rather walked through it a few moments later.

## II. LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248,

106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To determine whether any genuine fact issue exists, the court must assess the proof as presented in the record, including depositions, answers to interrogatories, admissions, and affidavits, to view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Fed. R. Civ. P. 56(c); *Scott v. Harris,* 550 U.S. 372, 378 (2007). The court may not weigh conflicting evidence or make credibility determinations. *Omnicare, Inc. v. UnitedHealth Grp., Inc.,* 629 F.3d 697, 704 (7th Cir. 2011). If a claim or defense is factually unsupported, the court should dispose of it at the summary judgment stage. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. In response, the non-moving party cannot rest on bare pleadings but must designate specific material facts showing there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548; *Insola v. Philip Morris Inc.,* 216 F.3d 596, 598 (7th Cir.2000).

## III. DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). Defendant does not contest that he was acting under color of state law when the incident took place.

Here, Plaintiffs allege that Defendant used excessive force that violated the Fourth Amendment, which triggers analysis under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). Thus, Plaintiffs must show that 1) a seizure occurred and 2) the officer's actions were "objectively unreasonable." *Id*. at 397. A

Fourth Amendment seizure occurs when "by means of physical force or a show of authority, [the plaintiff's] freedom of movement is restrained." *United States v. Mendenhall*, 446 U.S. 544, 553 (1980). Courts measure a person's freedom of movement by examining whether a reasonable person in that situation would believe he was free to leave, regardless of whether or not he attempts to leave. *Id*. at 554. Even an unintended bystander may be the object of a seizure as long as the detention itself is willful and not an "unknowing act." *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989).

I conclude that a reasonable jury could find that Plaintiffs were seized under the meaning of the Fourth Amendment. Although Plaintiffs were quickly and immediately ushered out of the area between Gates A and B, a jury could find that a reasonable person in Plaintiffs' circumstances might not believe she was free to leave. In the context of a maximum security prison, where visitors are already subject to prison officers' authority and regulation, the dispersement of pepper spray directed at the visitors could easily be interpreted as an order to stop and submit to the official's authority. Not only does the use of pepper spray communicate urgency and the assertion of official control, but it has real physiological consequences— including, as in this case, a burning sensation and watery eyes—that are intended to bring the subject up short and restrain her movements. Here, Plaintiffs were not significantly detained but that is because other officers (notably, not Defendant, to whose authority they may have felt compelled to submit) stepped in to remove them from the scene. Moreover, an attempt to restrain movement need not be successful in order to qualify as a seizure. *California v. Hodari D.*, 499 U.S. 621, 626 (1991). Given these factors, and taking all facts in the light most favorable to the Plaintiffs, a jury could find that Plaintiffs' freedom of movement was restrained "by means of physical force or a show of authority." *Mendenhall*, 446 U.S. at 553.

With regard to the intent requirement of the seizure analysis, the testimony on both sides presents significant issues of material fact that must be weighed by a jury. For instance, Defendant told his supervisor that the Plaintiffs were no more than six feet from him when he discharged the pepper spray, but testified during his deposition that no visitors were in the vicinity when the spray was dispersed, that the pepper spray hit the wall behind him but did not hit Plaintiffs or anyone else, that Plaintiffs were in the visiting room at the time, and that their injuries were caused by walking through the sprayed area. Conversely, Plaintiffs testified that they were in the locked area between Gate A and Gate B, that they saw Defendant discharge the pepper spray, that they were directly hit in the face and neck, and that Yvonn developed a rash through her clothing that, according to testimony by Lieutenant Hall, would not be a likely consequence of simply walking through a recently sprayed area. The questions raised by these inconsistencies must be submitted to a jury, as they require the fact-finder to make credibility determinations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (on summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . .").

Finally, a jury could find that Defendant's use of the pepper spray—if intentional—was objectively unreasonable, based on Defendant's admission that Plaintiffs were "cooperative, compliant, and not a threat to anyone at all relevant times while in the vicinity of Defendant." *See Brooks v. City of Aurora, Ill.*, 653 F.3d 478, 486 (7th Cir. 2011) (use of pepper spray was deemed to be excessive force when it was "gratuitous or unprovoked.").

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is denied.

ENTER:

James B. Zagel
United States District Judge

DATE: May 11, 2016